## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 15-cv-02806-JLK

STANLEY CROPP; and
CATHERINE CROPP,

Plaintiffs,

v.

LARIMER COUNTY, COLORADO;
KANDI WULFERT, Corporal of Larimer County Sheriff's Office, individually; and
JOHN DOES 1-10, individually,
Defendants.

_____

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
_____

COME NOW, Defendants Larimer County, Colorado; Kandi Wulfert in her individual capacity; and John Does 1-10 in their individual capacities, and through their respective counsel of record submit this Motion for Summary Judgment pursuant to F.R.C.P. 56, respectfully requesting this Court dismiss, with prejudice, all claims pending against Defendants in the above-captioned matter. In support thereof, Defendants show as follows:

### I.     INTRODUCTION AND SUMMARY OF ARGUMENTS

Plaintiff Stanley Cropp was arrested on two separate occasions, in December, 2013 and September, 2014, and following both arrests was held at the Larimer County Jail. [Complaint, filed December 23, 2015 (hereinafter "Doc. 1"), ¶¶ 13, 20, 23 & 38]. As a result of those two detentions, Plaintiffs Stanley and Cathy Cropp bring a total of five

discrete claims in this matter, as follows: 1) a 14th Amendment violation based on intentional interference with the right of familial association, based in part on a theory of failure to train and supervise; 2) a 1st and 14th Amendment retaliation claim based on the exercise of free speech; 3) a 14th Amendment claim for failure to provide medical care; 4) a claim for discrimination under the Americans with Disabilities Act ("ADA"), pursuant to 42 U.S.C. § 12132 *et seq.*, based on a failure to accommodate a disability; and 5) a violation of the Rehabilitation Act, pursuant to 29 U.S.C. § 701 *et seq.*, based on discriminatory denial of services, programs, activities and benefits at the Larimer County Jail. The first two claims are brought on behalf of both Plaintiffs.[1] The final three claims are brought solely on behalf of Mr. Cropp. However, all five claims are brought "against all defendants." [Doc. 1, pp. 11, 13, 14,16 & 18].

As a threshold matter, the John Doe Defendants one through ten are entitled to dismissal for failure to identify them as parties within the applicable statute of limitations. *See Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004).

Defendant Larimer County is subject to dismissal from all claims as an improper party, given that Plaintiffs failed to name the Larimer County Board of County Commissioners ("BOCC") pursuant to C.R.S. § 30-11-105. Moreover, even assuming Larimer County is a proper party, Plaintiffs have failed to show the existence of a policy, practice or custom of Larimer County that caused the alleged violation of Plaintiffs' rights under 42 U.S.C. § 1983 as required by *Monell v. Dep't of Soc. Servs.*, 436 U.S.

---

[1]     Because the Plaintiffs are married and share the same last name, clarity requires that Plaintiff Stanley Cropp and Plaintiff Catherine Cropp be referred to herein as "Mr. Cropp" and "Mrs. Cropp," respectively, unless referred to collectively.

658 (1978). With respect to the claims alleged under the ADA and the Rehabilitation Act, Larimer County is entitled to dismissal because Mr. Cropp has failed to show that because of his disability he was denied services provided to other prisoners, that his disability was not accommodated by Larimer County, or that he was denied benefits based solely on his disability. *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1144 (10th Cir. 2005).

Finally, Defendant Kandi Wulfert is entitled to dismissal of the ADA and Rehabilitation Act claims because an individual cannot be sued under either of those statutory schemes. *See, e.g., Butler City of Prairie Village*, 172 F.3d 736, 744 (10th Cir. 1999); *Montez v. Romer*, 32 F. Supp. 2d 1235, 1240-41 (D. Colo. 1999). With respect to the claims brought pursuant to Section 1983, Defendant Wulfert is entitled to dismissal based on Mr. Cropp's failure to demonstrate personal participation in the alleged denial of medical care, as well as the failure of both Plaintiffs to demonstrate a constitutional violation of a clearly established right under the doctrine of qualified immunity.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

The following facts are undisputed or deemed to be undisputed for purposes of this Motion:

1.   On December 26, 2013 at approximately 10:00 p.m., Mr. Cropp was arrested by the Ft. Collins Police Department and transported to the Larimer County Jail. [Doc. 1, ¶ 2; Defendants' Answer to Plaintiffs' Complaint, filed March 7, 2016 (hereinafter "Doc. 10"), ¶ 6].

2.      On December 26, 2013, at approximately 10:50 p.m., Mrs. Cropp was notified by telephone that Mr. Cropp had been arrested and was being held at the Larimer County Jail. [Doc. 1, ¶ 23; Doc. 10, ¶ 10; Depo. Trans. of Catherine Cropp, appended hereto as **Exhibit A**, 98:6-7].

3.      During this telephone call, Mr. Cropp was allowed to speak to Mrs. Cropp. [**Exhibit A**, 99:8-10; 125:19-25].

4.      The conversation between Plaintiffs was brief, with Mrs. Cropp informing Mr. Cropp that she was coming to the jail. [**Exhibit A**, 100:9-11, 16-18].

5.      Sometime thereafter, Mrs. Cropp arrived at the Larimer County Jail and contacted Defendant Larimer County Sheriff Deputy Wulfert and several Larimer County Jail personnel. [Doc. 1, ¶¶ 24 & 30; Doc. 10, ¶¶ 11 & 12].

6.      During her contact with Defendant Wulfert, Mrs. Cropp mentioned that Mr. Cropp had Alzheimer's disease. [Doc. 1, ¶ 24; Doc. 10, ¶ 11].

7.      When Mrs. Cropp arrived at the Larimer County Jail, Mr. Cropp was again allowed to speak with her over the telephone. [**Exhibit A**, 104:2-3].

8.      Mr. Cropp informed his wife over the phone that he was provided some forms by Larimer County Jail personnel to sign in order to be released from custody, but indicated that he did not understand the forms. [**Exhibit A**, 120:2-7].

9.      Mrs. Cropp suggested to Defendant Wulfert that she could assist Mr. Cropp in understanding the required forms. [**Exhibit A**, 114:19-21].

10.     Mrs. Cropp asked to be allowed to sit down with Mr. Cropp in order to assist him in understanding and completing the paperwork. [**Exhibit A**, 118:13-15].

11.  In response to this request, Defendant Wulfert and other Larimer County Jail personnel offered Mrs. Cropp the opportunity to sit down and visit with Mr. Cropp utilizing a visitation booth with a clear glass partition with phones on each side to allow conversation. [**Exhibit A**, 122:10-12 & 17-19].

12.  Mrs. Cropp declined the opportunity to sit down with Mr. Cropp, face to face, utilizing the jail visitation booth. [**Exhibit A**, 122:13-23].

13.  Mr. Cropp was also offered the opportunity to meet with Mrs. Cropp utilizing the visitation booth with a glass partition and actually recalls using the visitation booth to meet with Mrs. Cropp for a short time.  [Depo. Trans. of Stanley Cropp, appended hereto as **Exhibit B**, 74:3-25; 75:1-2].

14.  During her contact with Defendant Wulfert, Mrs. Cropp also asked to speak to a nurse from the jail and Defendant Wulfert asked a nurse to come to the lobby window. [**Exhibit A**, 129:24 – 130:1-8].

15.  Mrs. Cropp refused to communicate with the nurse through the lobby window glass and in the presence of Defendant Wulfert. [**Exhibit A**, 131:21 – 132:16; 133:4-7].

16.  Despite being able to speak to Mr. Cropp over the phone twice, and offered to sit down with Mr. Cropp utilizing a visitation booth to help explain the paperwork required to be completed in order to secure Mr. Cropp's release from custody, at no time did Mrs. Cropp request a copy of the required paperwork to review. [**Exhibit A**, 119:25 – 120:12; 150:22-25].

17.   During her contact with Defendant Wulfert, Mrs. Cropp also asked to speak to Defendant Wulfert's supervisor; despite being the senior officer on duty at the jail at that time, Defendant Wulfert made arraignments for Mrs. Cropp to speak to Lieutenant Esters, who was off duty, via telephone. [**Exhibit A**, 151:23 – 152:7].

18.   Mr. Cropp was released from the Larimer County Jail at approximately 9:09 a.m. on December 27, 2013, having spent approximately eleven hours in detention. [Depo. Exh. #8, appended hereto as **Exhibit C**, p. 3].

19.   Approximately nine months later, Mr. Cropp was again arrested by the Ft. Collins Police Department and detained at the Larimer County Jail on September 13, 2014. [Doc. 1, ¶ 38; Doc. 10, ¶ 14; Depo. Exh. #11, appended hereto as **Exhibit D**, p. 35].

20.   Mr. Cropp was released from the Larimer County Jail two days later, on September 15, 2014. [**Exhibit D**, p. 36].

21.   The Larimer County Jail contracts with a company called Correct Care Solutions (hereinafter "CCS") to provide medical staffing at the Larimer County Jail. [Depo. Trans. of Marie Erica Uzpen, appended hereto as **Exhibit E**, 7:7-25].

22.   CCS staff provide medical care to the inmates at the Larimer County Jail, to include the dispensing of medications. [**Exhibit E**, 11:12 – 12:10].

23.   The Larimer County Jail has a policy prohibiting the administering of medications that are categorized as controlled substances or medications that are in capsule form and provided to the jail in any previously opened prescription bottle. [**Exhibit E**, 67:19 – 68:4].

6

24.  During his incarceration at the Larimer County Jail in September of 2014, Mr. Cropp's son provided eleven medications to jail personnel which were received, counted and logged by the jail nursing staff. [Depo. Exh. #21, appended hereto as **Exhibit F**, p. 8].

25.  During his incarceration in September 2014, CCS medical staff did not administer to Mr. Cropp his prescription Vyvanse (an ADHD medication), Lunesta (a sleep aid) and Lyrica (a pain medication) because these medications are controlled substances and prohibited by Larimer County Jail policy. [**Exhibit E**, 65:17 – 66:18].

26.  During his incarceration in September 2014, Mr. Cropp was administered all medications provided by his son which were not deemed to be controlled substances. [Depo. Exh. #15, appended hereto as **Exhibit G**, pp. 74-75].

27.  During his incarceration in September 2014, Mr. Cropp complained of chest pains and difficulty breathing and was taken to the jail clinic where the medical protocol for chest pain was initiated and an EKG was performed, the results of which were normal with no remarkable abnormalities. [**Exhibit G**, p. 78].

28.  Larimer County is a political subdivision of the State of Colorado. [Doc. 1, ¶ 10; Doc. 10, ¶ 8].

29.  Larimer County is a public entity as that term is used in Title II of the ADA and, at all relevant times to this litigation, received federal financial assistance as the term is used in 29 U.S.C. § 794. [Doc. 1, ¶¶ 78 & 94; Doc. 10, ¶ 2].

30.  The Larimer County Sheriff is an independently elected public official responsible for the operations of the Larimer County Jail and the actions of his deputies and employees, independent of the Larimer County Board of County Commissioners. [Const. Colo. art. XIV, §8; C.R.S. § 17-26-102; C.R.S. § 30-10-506; C.R.S. § 30-10-511; *Tunget v. Bd. of Cty. Comm'rs*, 992 P.2d 650 (Colo. App. 2000); *Bristol v. Bd. of Cty. Comm'rs of Clear Creek*, 312 F.3d 1213 (10th Cir. 2002)].

31.  Defendant Kandi Wulfert is a citizen of the United States and a resident of the State of Colorado. [Doc. 1, ¶ 11; Doc. 10, ¶ 2].

32.  At all times relevant to this litigation, Defendant Kandi Wulfert was acting under color of law and within the course and scope of her employment as an employee of the Larimer County Sheriff's Office (hereinafter "LCSO"). [Doc. 1, ¶¶ 11, 69 & 73; Doc. 10, ¶ 2].

33.  During his incarceration in September of 2014, Mr. Cropp had no interaction with Defendant Wulfert. [Depo Trans. of Kandace Wulfert, appended hereto as **Exhibit I**, p. 153:8-21].

34.  Plaintiffs filed their Complaint in this matter on December 23, 2015. [Doc. 1].

35.  The deadline for joinder of parties and amendment of pleadings in this matter was May 3, 2016. [Stipulated Scheduling and Discovery Order, filed May 3, 2016 (hereinafter "Doc. 19"), p. 15].

## II.   STANDARD OF REVIEW

### A.   Summary Judgment Standard

Summary judgment is not regarded as a disfavored shortcut but rather as an integral part of the Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986). Granting summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. F.R.C.P. 56(c). In determining entitlement to summary judgment, all reasonable factual inferences must be drawn in favor of the nonmoving party. *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir. 1980). However, if a moving party has demonstrated the absence of a genuine issue of material fact, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The mere existence of some evidence in support of the nonmoving party is insufficient for denial of summary judgment. There must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Concomitantly, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322. When considering a motion for summary judgment and a properly filed response, the court is entitled to assume that the evidence as set forth by the parties comprises the totality of the evidence which must be considered. *Harrison Western Corp. v. Gulf Oil Co.,* 662 F.2d 690, 692 (10th Cir. 1981).

> **B.      Standard of Review Under Qualified Immunity**

"Because of the underlying purposes of qualified immunity, … qualified immunity questions [are decided] differently from other summary judgment decisions." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). While the Court "still view[s] the facts in the light most favorable to the non-moving party and resolve[s] all factual disputes and reasonable inferences in its favor," *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014), under the qualified immunity doctrine "the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established at the time of defendant's conduct. *Courtney v. Okla. ex rel. Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013). The first prong is met if the evidence, viewed in the light most favorable to the plaintiff, shows that defendants violated the plaintiff's constitutional rights. The second prong requires a plaintiff to show that it 'would be clear to a reasonable officer that [the officer's] conduct was unlawful in the situation he confronted.' *Courtney*, 722 F.3d at 1222. Under Supreme Court and Tenth Circuit decisions, a law is not clearly established unless existing precedent places the right in question 'beyond debate.' *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 (2011). If a 'plaintiff successfully carries his two-part burden,' then the burden shifts to the defendant, who 'bears the burden, as an ordinary movant for summary judgment, of showing no material issues of fact remain that would defeat the claim of qualified immunity.' *Estate of Booker v. Gomez*, 745 F.3d 405, 412 (10th Cir. 2014) (citations omitted)." *Valencia v. De Luca*, 2014 U.S. Dist. LEXIS 188803, at *4-5 (D.N.M. Aug. 26, 2014). However, "Plaintiff bears a heavier burden in establishing that the right allegedly violated was clearly established at the time of his injury. He must do more than simply

allege the violation of a general legal precept; rather, [he is] required to demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that [Defendants'] actions were clearly prohibited." *Sellier v. Flores*, 2011 U.S. Dist. LEXIS 75627, at \*10 (D. Colo. July 13, 2011) (internal quotation marks omitted) (citing *Adamson v. Multi. Cmty, Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008)).

### III.   ARGUMENT

**A.   The "John Doe" Defendants must be dismissed for failure to properly name these Defendants within the statutory limitations period.**

Colorado's general two-year statute of limitations applies to actions brought under 42 U.S.C. § 1983, the ADA, and the Rehabilitation Act. *Workman v. Jordan*, 32 F.3d 475, 482 (10th Cir. 1994) (Section 1983 claims); *Hughes v. Colo. Dep't of Corr.*, 594 F. Supp. 2d 1226, 1235 (D. Colo. 2009) (ADA claims (citing *Quinn v. Univ. of Okla.*, 276 F. App'x. 809, 810 (10th Cir. 2008); *Wilkins v. Colo. Dep't of Soc. Servs.*, 9 F. App'x. 818, 819 (10th Cir. 2001)); *Schuler v. Univ. of Denver*, Civil Action No. 13-cv-00358-RPM, 2014 U.S. Dist. LEXIS 139393 (D. Colo. Oct. 1, 2014) (Rehabilitation Act claims); *see also Levy v. Kan. Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1171-74 (10th Cir. 2015) (Rehabilitation Act claims are subject to the same two-year statute of limitations under Kansas law as Section 1983 claims). Thus, the limitations period for all the claims alleged in Plaintiffs' Complaint expired, at the very latest, on September 15th, 2016. [Doc. 1, ¶¶ 35 & 38; **Exhibit D**, p. 36].

As more than two years have passed since the time of the alleged events on which the claims against the John Doe Defendants are based, these unnamed

Defendants must be dismissed, because amending the Complaint to substitute named defendants for the listed "John Does" at this point amounts to adding new parties. *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004). Thus, amendment can only be allowed if it is not futile, and futility is only defeated if the amendment relates back to the original complaint under F.R.C.P. 15(c). An amendment that adds a new party relates back to the complaint only when the party to be brought in by amendment "[1] received such notice of the action such that it will not be prejudiced in defending on the merits; and [2] knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." F.R.C.P. 15(c)(1)(C)(i), (ii). Pertinent to the instant case, the Tenth Circuit maintains that "a plaintiff's lack of knowledge of the intended defendant's identity is not a mistake concerning the identity of the proper party within the meaning of [Rule 15(c)(1)(C)]." *Garrett*, 362 F.3d at 696 (quotation omitted). In other words, a "plaintiff's designation of an unknown defendant … in the original complaint is not a formal defect of the type [the rule] was meant to address," and a later amendment that specifically names that defendant does not relate back to the original complaint. *Id.* at 697; *see also Tapia-Ortiz v. Doe*, 171 F.3d 150, 151-52 (2d Cir. 1999) ("Although [plaintiff] filed his complaint naming defendant officers as 'John Does' within the … limitations period, it is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued. … [Plaintiff's] failure until two years after the expiration of the statute of limitations period to name specifically in

his complaint the officers who allegedly violated his rights is therefore fatal to his …
claim." (internal quotation marks and citations omitted)).

In light of the foregoing, Plaintiffs cannot amend the Complaint at this point
without futility, and the "John Doe" Defendants must be dismissed with prejudice.

**B.     Defendant Larimer County must be dismissed as an improper party because the Court lacks personal jurisdiction over Larimer County.**

Plaintiffs filed their Complaint in this matter on December 23rd, 2015, naming
"Larimer County, Colorado" as the primary defendant. [Doc. 1, p.1]. Plaintiffs did not
name the BOCC as defendants. Moreover, Plaintiffs alleged that Larimer County "is
responsible for the supervision, training, official polices [*sic*], customs, and actual
practices of the Larimer County Sheriff's Office, along with the supervision, training,
official polices [*sic*] customs, and actual practices of the Larimer County Jail." [Id., ¶ 10].
Defendants answered that allegation with a specific denial. [Doc. 10, ¶ 8]. Pursuant to
the Stipulated Scheduling and Discovery Order, the deadline for joinder of parties and
amendment of pleadings was June 17, 2016. [Doc. 19, p. 15]. Plaintiffs never sought to
amend the pleadings or join other parties in this case.

"Larimer County, Colorado" is not an entity capable of suing or being sued.
Colorado law provides that "the name in which the county shall sue or be sued shall be,
'The board of county commissioners of the county of ....'" C.R.S. § 30-11-105. The
Tenth Circuit has established that "[t]his statutory provision provides the exclusive
method by which jurisdiction over a county can be obtained. An action attempted to be
brought under any other designation is a nullity, and no valid judgment can enter in such
a case." *Gonzales v. Martinez*, 403 F.3d 1179, 1187 n.7 (10th Cir. 2005) (quoting

*Calahan v. Jefferson County*, 163 Colo. 212, 429 P.2d 301 (1967)). This Court thus lacks personal jurisdiction over Larimer County, and the County must therefore be dismissed from this action. *See also DeHerrera v. Cnty. of Costilla*, 2011 U.S. Dist. LEXIS 37390, at *3 (D. Colo. Mar. 29, 2011); *Sisneros v. Cnty. of Pueblo*, 2010 U.S. Dist. LEXIS 51830, at *2 (D. Colo. May 3, 2010).

Moreover, all of the conduct complained of in this case was engaged in by Larimer County Sheriff personnel. [Doc. 1, ¶¶ 11 & 12]. The Larimer County Sheriff is an independently elected public official responsible for the operations of the Larimer County Jail and the actions of his deputies and employees, independent of the Larimer County Board of County Commissioners. *Compare*, C.R.S. § 17-26-102; *Tunget v. Bd. of Cty. Comm'rs*, 992 P.2d 650 (Colo. App. 2000); *Bristol v. Bd. of Cty. Comm'rs of Clear Creek*, 312 F.3d 1213 (10th Cir. 2002); *with*, C.R.S. § 30-11-107 (establishing powers of boards of county commissioners in Colorado), *and*, *Richart v. Bd. of Comm'rs*, 33 P.2d 971, 972 (Colo. 1934) (holding that the general powers conferred to boards of county commissioners by statute yield to the specific statutory powers conferred to sheriffs with respect to jails); *see also Terry v. Sullivan*, 58 P.3d 1098, 1102 (Colo. App. 2002) ("…the Board [of County Commissioners] does not exercise managerial control over either the sheriff or the detention center and its staff."); *Sisneros v. County of Pueblo*, No. 09-cv-01646-PAB-MJW, 2010 U.S. Dist. LEXIS 51830, at *9 (D. Colo. May 3, 2010) ("… any allegations regarding the conduct of the Sheriff's Office in managing the jail and any resulting harm to plaintiff are, without more, insufficient to state a claim against the County of Pueblo." (citing *Terry*, *supra*)).

14

In light of the exclusive charge of jail operations and personnel exercised by the Sheriff pursuant to statutory authority, Larimer County cannot be liable for the actions complained of by Plaintiffs in this case, and must be dismissed.

**C.   Even if held to be a proper party, Larimer County is subject to dismissal from all of Plaintiffs' claims for failure to establish liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), for failure to establish a violation of the ADA and the Rehabilitation Act, and for failure to establish an underlying constitutional violation by Defendant Wulfert.**

**1.   Plaintiffs' claims under 42 U.S.C. § 1983.**

It is well established that a public entity can only be liable pursuant to Section 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. Therefore, Plaintiffs are required to identify a "policy" or "custom" of Larimer County that caused their injury, in order to state a claim against Larimer County itself.[2] *Kennedy v. Finley*, No. 11-cv-00967-REB-KMT, 2011 WL 3236174, at *3 (D. Colo. July 28, 2011) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Under *Monell*, liability for the actions of public employees may be established in one of two ways, contingent on whether the plaintiff has alleged an unconstitutional official policy. If an official policy is alleged, then a single instance of unconstitutional conduct could support entity liability; conversely, where no such policy is alleged, the plaintiff must establish facts that show the challenged practice is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996) (quoting *Adickes v. S.H.*

---

[2]    Or county employees in their official capacities. However, Plaintiffs here bring no official capacity claims.

*Kress & Co.*, 398 U.S. 144, 168 (1970)); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). To show such a custom, Plaintiff must show "[t]he existence of a continuing, persistent and widespread practice of unconstitutional misconduct" by public employees. *Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993).

Here, the record is bereft of any facts related to anyone other than the Plaintiffs themselves, and specifically references only the two periods of time in which Mr. Cropp was incarcerated at the Larimer County Jail. As such, Plaintiffs have not produced record evidence supporting a viable claim based on the existence of a "permanent and well settled" unofficial custom or practice. Thus, the "official policy" option is the only remaining possibility for Plaintiff to establish claims against Larimer County. However, to show an official "existing, unconstitutional municipal policy … attribut[able] to a [public official] policymaker," *Oklahoma City*, 471 U.S. at 823-24, Plaintiff must allege "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the entity's] officers," *Lankford*, 73 F.3d at 286 (citation and internal quotation marks omitted). The record in this case simply does not contain any evidence that Larimer County has adopted or promulgated any policy statement, ordinance, regulation, or decision regarding the conduct of Larimer County Jail personnel with respect to the Plaintiffs' exercise of First Amendment rights, interference with familial association, or denial of medical care. Neither have Plaintiffs produced any record evidence to support the notion that an official with final policymaking authority over these particular areas of

concern adopted or promulgated such a policy. *See Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009); *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996).

Indeed, the only "policy" referenced in the record evidence and relevant to Plaintiffs complaints is that prohibiting direct contact visitation with pretrial detainees by family members at the Larimer County Jail. Like most jails, the Larimer County Jail is a secured facility and the purpose of the policy prohibiting contact visits between an inmate and their family members relates specifically to the security of the facility, mitigating inmate escape risks and providing for the safety of those individuals within the facility, including jail staff and other inmates alike.  [Rule 36(b)(6) Depo. Trans. of Timothy Palmer, appended hereto as **Exhibit H**, 64:20 – 66:15; 68:8 – 69:6]. The policy is absolute, designed to protect against known and unknown security risks to the Larimer County Jail. [**Exhibit H**, 70:3 – 71:21].

This policy is constitutional as a matter of law. The United States Supreme Court has recognized the valid and rational connection between a ban on contact visits and the internal security of a detention facility like the Larimer County Jail. *Block v. Rutherford*, 468 U.S. 576, 586 (1984). As recognized by the Supreme Court, contact visits present a host of security problems including the potential for introduction of drugs, weapons and other contraband into the facility, as well as increased safety risks to innocent family, friends and jail personnel within the facility. *Id.* at 586-587. Here, Mr. Cropp was a pretrial detainee on December 26-27, 2013 as he was being booked into the jail on charges of obstruction and resisting arrest. [**Exhibit C**, p. 2.] As a pretrial detainee, the Larimer County Jail policies and procedures prohibited Mr. Cropp from

having contact visitation with his wife, Mrs. Cropp. [**Exhibit H**, 23:17-22]. The prohibition on that level of intimate visitation with detainees is justified by the safety concerns inherent in the operation of the Larimer County Jail, and enforcing that policy cannot therefore be unconstitutional.

The lack of any evidence showing unconstitutional actions directly resulting from official or unofficial policy, custom or practice of Larimer County is thus fatal to Plaintiffs' claims under Section 1983. Therefore, even assuming Larimer County is a proper party (which, as demonstrated above, it is not), Larimer County is nonetheless entitled to dismissal of Plaintiff's Section 1983 claims on this ground as well.

## 2.      Plaintiff's claims under the ADA and the Rehabilitation Act.

In the Tenth Circuit, claims under the ADA and the Rehabilitation act are analyzed together under the same standards. *Hernandez v. Bd. of Educ. Of Albuquerque Pub. Sch.*, 124 F. Supp. 3d 1181, 1184 (D.N.M. 2015) (citing *Kimble v. Douglas Cty. Sch. Dist. RE-1*, 925 F. Supp. 2d 1176, 1182 (D. Colo. 2013); *Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011)). "To state a claim under the ADA (and the Rehabilitation Act) a plaintiff must allege that: (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Anderson v. Colo. Dep't of Corr.*, 848 F. Supp. 2d 1291, 1300 (D. Colo. 2012) (internal quotations and citations omitted). More specifically, Mr. Cropp must show that he was denied such

benefits "solely by reason of disability." *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (citation omitted).

Assuming *arguendo* that Mr. Cropp is a qualified individual with a disability, the record in this case contains no evidence in satisfaction of the last two prongs of an ADA or Rehabilitation Act claim. Mr. Cropp can point to no evidence in the record that he was excluded from participation or denied benefits available to other pretrial detainees of the Larimer County Jail. Indeed, the only "benefit" that Mr. Cropp appears to claim he was denied was the ability to visit with Mrs. Cropp with no physical barriers (i.e., glass partition) between them. However, no other pretrial detainees are allowed visitation under those circumstances, either. [**Exhibit H**, 23:17-22; 64:20 – 66:15; 68:8 – 69:6; 70:3 – 71:21]. Moreover, even if allowing Mr. Cropp to visit with Mrs. Cropp without any physical barrier between them could somehow be considered an "accommodation" of Mr. Cropp's disability, the record nonetheless fails to produce any evidence that Defendants acted with a motive to intentionally discriminate against Mr. Cropp because of his disability in enforcing the visitation policy. *See, e.g., Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011) (instructing that discriminatory motive must be a "determining factor" in defendants' actions).

In light of the foregoing, even assuming that Larimer County is a proper defendant in this matter, all claims against the County must be dismissed for failure to

establish *Monell* liability for Plaintiffs' Section 1983 claims, and failure to establish intentional discrimination or denial of benefits under the ADA and Rehabilitation Act.[3]

**3.    Larimer County is further subject to dismissal for Plaintiffs' failure to establish a constitutional violation by any County employee under Plaintiffs' First, Second and Third Claims for Relief.**

In addition to the foregoing, Defendant Larimer County is also subject to dismissal on Plaintiffs' three Section 1983 claims for failure to establish a constitutional violation by a County employee and for failing to establish deliberate indifference on behalf of the County as it relates to Plaintiffs' Intentional Interference with Rights to Familial Association claim. As demonstrated at length below in Sections E and F of this Motion, the record evidence shows that the actions of Defendant Wulfert and, indeed, all personnel of the Larimer County Sheriff, were at all times constitutional and in compliance with the law with respect to Plaintiffs. *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (an entity "may not be held liable where there was no underlying constitutional violation by any of its officers." (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986))). Larimer County is thus entitled to dismissal of Plaintiffs' Section 1983 claims on this ground as well.

**D.    Defendant Kandi Wulfert is subject to dismissal of Plaintiff Stanley Cropp's claims under the ADA and Rehabilitation Act because an individual cannot be sued under those statutory schemes.**

---

[3]    It should be noted here that Mr. Cropp appears also to base his ADA and Rehabilitation Act claims, at least peripherally, on failing to provide him medications during his two detentions. [Doc. 1,  ¶ 95]. However, it is well-established that neither the ADA nor Rehabilitation Act provide remedies for medical negligence. *Fitzgerald*, 403 F.3d at 1144 (citing, *inter alia*, *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("ADA does not create a remedy for medical malpractice")).

As noted above, Plaintiffs allege all of their claims against "all defendants," including the claims brought under the ADA and the Rehabilitation Act. [Doc. 1, pp. 16, 18]. However, it has been established in the Tenth Circuit for some time that the ADA does not provide for liability against individuals. *See Butler City of Prairie Village*, 172 F.3d 736, 744 (10th Cir. 1999); *see also Ray v. Dep't of Corr.*, 2016 U.S. Dist. LEXIS 41184, at *9-10 (W.D. Okla. March 2, 2016) (noting extension of *Butler* holding to Title II of the ADA, and citing to *Malipurathu v. Jones*, 2012 U.S. Dist. LEXIS 124983, at *9 (W.D. Okla. June 14, 2012) (R. & R.), *adopted in relevant part*, 2012 U.S. Dist. LEXIS 124987, at *2 (W.D. Okla. Sept. 4, 2012), *and aff'd*, 563 F. App'x 646 (10th Cir. 2014)); *Brooks v. Colo. Dep't of Corr.*, 2014 U.S. Dist. LEXIS 148124, at *44 (D. Colo. Oct. 17, 2014). And while the Tenth Circuit appears not to have directly addressed the issue with specific respect to the Rehabilitation Act, District Courts in Colorado have recognized that "the Tenth Circuit has upheld a district court's finding that the Rehabilitation Act does not permit actions against persons in their individual capacities. *Moore [v. Cooksey]*, 242 F. 3d 389, [published in full-text format at 2000 U.S. App. LEXIS 31858, 2000 WL 1838274, at *1-2 (citing *Hiler v. Brown*, 177 F.3d 542, 545-46 (6th Cir. 1999))." *Brown v. Cantrell*, 2012 U.S. Dist. LEXIS 115759, at *25 (D. Colo. Feb. 9, 2012); *see also Brown v. Cantrell*, 2012 U.S. Dist. LEXIS 131188, at *3 (D. Colo. Sept. 14, 2012) ("Plaintiff may not proceed pursuant to Section 504 of the Rehabilitation Act against the defendants in their individual capacities." (citing *Montez v. Romer*, 32 F. Supp. 2d 1235, 1240-41 (D. Colo. 1999) (analyzing statutory framework and case authority and

concluding, "defendants in their individual capacities are not properly subject to suit under the Rehabilitation Act or the Disability Act.")))

Put simply, the foregoing authority and analysis establishes that individual capacity claims are unavailable to Plaintiffs under either the ADA or the Rehabilitation Act, and Plaintiff Stanley Cropp's Fourth and Fifth claims for relief must be dismissed insofar as they are brought against Defendant Wulfert.

**E.   Defendant Wulfert is entitled to dismissal of Plaintiff Stanley Cropp's Third Claim for Relief for lack of personal participation in the alleged failure to provide medical care under the 14th Amendment.**

Individual liability pursuant to Section 1983 "must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1425 (10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a Section 1983 claim." (citations omitted)). A defendant is personally involved in an alleged constitutional violation only if there is an "affirmative link" between his or her conduct and the described violation. *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001). Further, the Tenth Circuit has emphasized that because Section 1983 claims "often include the government agency and a number of government actors sued in their individual capacities," it is "particularly important … that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008).

Here, Mr. Cropp generally alleges that he was denied medications for his Alzeimer's Disease while detained at the Larimer County Jail in both 2013 and 2014, but does not allege who, specifically denied him those medications. [Doc. 1, ¶¶ 32 & 38]. The only evidence in the record with respect to this issue is the deposition testimony of Defendant Wulfert and Larimer County Jail Nurse Marie Uzpen. With respect to the December, 2013 detention of Mr. Cropp, Defendant Wulfert could not have denied Mr. Cropp his medications because dispensing medications to detainees is solely the responsibility of medical personnel at the jail. [**Exhibit I**, 140:14 – 141:20]. With respect to Mr. Cropp's September, 2014 detention, Defendant Wulfert had no contact with Mr. Cropp during that time. [**Exhibit I**, 153:8-21]. Moreover, Nurse Uzpen testified at length that Mr. Cropp's medications were, in fact, provided to him during his September, 2014 detention period, consistent with Larimer County Jail policy. [**Exhibit E**, 53:8 – 63:23].

As the foregoing demonstrates, Mr. Cropp can point to no evidence in the record demonstrating that Defendant Wulfert had any personal participation in the alleged denial of medical care set forth in the Third Claim for Relief, and Defendant Wulfert is therefore entitled to dismissal of this claim as well.

**F.    Defendant Wulfert is entitled to dismissal of Plaintiffs' First and Second claims for relief as Plaintiffs have failed to establish a constitutional violation and Defendant Wulfert is entitled to qualified immunity.**

**1.  Plaintiffs' Familial Association claim.**

The right to familial association is a substantive due process right properly evaluated under the liberty provisions of the Fourteenth Amendment. *Griffin v. Strong*,

983 F.2d 1544, 1547 (10th Cir. 1993). An analysis of whether the Plaintiffs' constitutional rights have been violated under the Fourteenth Amendment requires a balancing of the Plaintiffs' liberty interest against the relevant interests of the state. *Id.* In addition to this balancing of interests, Plaintiffs must also prove that a defendant intended to interfere with a particular and protected familial or intimate relationship in order to state a claim under Section 1983. *Trujillo v. Board of County Comm'rs*, 768 F.2d 1186, 1190 (10th Cir. 1985). The right of intimate familial association is not absolute. *Griffin*, 983 F.2d at 1549 (citing *Kraft v. Jacka*, 872 F.2d 862, 872 (9th Cir. 1989)). "Not every statement or act that *results* in an interference with the rights of intimate association is actionable. Rather, to rise to the level of a constitutional claim, the defendant must *direct* his or her statements or conduct at the intimate relationship with knowledge that the statements or conduct will adversely affect that relationship." *Griffin*, 983 F.2d at 1548 (emphasis original) (citing *Trujillo*, 768 F.2d at 1190).

### a. Plaintiffs did not possess a liberty interest in contact visitation under the Fourteenth Amendment.

To establish a claim of denial of due process in violation of the Fourteenth Amendment, a plaintiff must show the deprivation of a protected liberty or property interest. *Schmidt v. Rice*, 421 Fed. Appx. 858, 861 (10th Cir. 2011). Where it is alleged that a pretrial detainee has been deprived of liberty without due process, the dispositive inquiry is whether the challenged condition, practice, or policy constitutes punishment, for under the Due Process Clause, a detainee must not be punished prior to adjudication of guilt in accordance with due process of law. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). A court must determine whether the particular condition or restriction is

imposed for the purpose of punishment or whether it is reasonably related to some other legitimate governmental purpose. *Id.* at 535. If a particular condition or restriction of pretrial detention is reasonably related to a legitimate government objective, it does not, without more, amount to punishment. *Id.* at 539. Absent any proof that the purpose of the condition, restriction or policy was to punish pretrial detainees, the Court need only evaluate whether the policy was reasonably related to a legitimate government objective and whether it appears excessive in relation to that objective. *Rutherford*, 468 U.S. at 584-586. In doing so, the Court should play a very limited role in assessing whether a specific restriction is reasonably related to security interests as such considerations are "peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations courts should ordinarily defer to their expert judgement in such matters." *Id.* at 584-585 (quoting *Wolfish*, 441 U.S. at 540-541, n. 23).

As already noted above, there is a valid, rational connection between a ban on contact visits and the internal security of a detention facility like the Larimer County Jail. *Rutherford*, 468 U.S. at 586. Contact visits present a host of security problems including the potential for introduction of drugs, weapons and other contraband into the facility, as well as increased safety risks to innocent family, friends and jail personnel within the facility. *Id.* at 586-587. Blanket prohibitions on contact visitation is thus an entirely reasonable, non-punitive response to legitimate security concerns and is consistent with the Fourteenth Amendment. *Rutherford*, 468 U.S. at 588.

25

In compliance with the law and Larimer County Jail policy, and with the safety and security of the facility in mind, Defendant Wulfert reasonably declined Mrs. Cropp's demands for a "non-obstructive" contact visitation with Mr. Cropp. [**Exhibit I**, 14:20 – 15:8]. Further, and despite Plainitffs' contentions to the contrary, Defendant Wulfert was under no obligation to undertake the difficult, if not impossible, task of attempting to identify certain situations or candidates, on a case-by-case basis, to which an exception to the blanket policy may apply. *Rutherford*, 468 U.S at 587. To do so "could well create tension between those allowed contact visits and those not." *Id.*

Simply put, the Constitution does not require that pretrial detainees be allowed contact visits when responsible, experienced administrators have determined, in their sound discretion, that such visits will jeopardize the security of the facility. *Id.* at 589. In light of the above, the Court's balancing of interests must militate to Defendant Wulfert's benefits, as Plaintiffs did not, and do not, possess a liberty interest in contact visitation given the reasonably legitimate governmental objective of providing and maintaining the security of the Larimer County Jail. As such, Plaintiffs' First claim for relief must be dismissed.

### b. Even if Plaintiffs were able to establish a liberty interest in contact visitation, Defendant Wulfert's conduct was not intended to interfere with the Plaintiffs' relationship.

Although subject to dismissal as detailed above, even assuming Plaintiffs could establish a liberty interest in contact visitation, the Plaintiffs' First claim for Relief must still be dismissed for Plaintiffs' failure to establish that Defendant Wulfert's conduct was intended to interfere with or adversely affect Plaintiffs' relationship. To the contrary, the

record clearly establishes Defendant Wulfert and other Larimer County Jail personnel attempted to assist Plaintiffs in their ability to communicate and ultimately bond Mr. Cropp out of jail. First, jail personnel proactively notified Mrs. Cropp that Mr. Cropp was in custody. [Doc. 1, ¶ 23; Doc. 10, ¶ 10; **Exhibit A**, 98:6-7]. Next, Mr. Cropp was allowed to speak over the telephone with Mrs. Cropp on at least two separate occasions regarding his detention and the necessary requirements to bond out of jail. [**Exhibit A**, 99:8-10; 104:2-3; 120:2-7; 125:19-25].

In response Mrs. Cropp's repeated demands to see Mr. Cropp in person, face to face, in order to explain the required documents Mr. Cropp needed to sign to secure his release, Defendant Wulfert and other Larimer County Jail personnel offered Mrs. Cropp the opportunity to sit down and visit with Mr. Cropp utilizing a visitation booth with a clear glass partition and phones on each side to allow conversation. [**Exhibit I**, 14:5-9; **Exhibit A**, 122:10-12 & 17-19]. Mrs. Cropp refused to use the jail visitation booth in order to meet with Mr. Cropp face to face. [**Exhibit A**, 122:13-23].

In order to sustain their claim for intentional interference with familial association, Plaintiffs' must establish that the Defendants *intended* to interfere with a protected familial or intimate relationship. *Trujillo v. Board of County Comm'rs*, 768 F.2d 1186, 1190 (10th Cir. 1985) (emphasis added). To the contrary, here, the record evidence demonstrates that Defendant Wulfert and other Larimer County Jail personnel were making every attempt – consistent with the constitutional policy forbidding direct contact visitation between pretrial detainees and their family members – to facilitate Mrs. Cropp's ability to meet with and communicate with Mr. Cropp while also maintaining the

safety and security of the jail facility. Indeed, it was Mrs. Cropp's own refusal to utilize the visitation booth located in the booking area that prevented a face to face conversation with Mr. Cropp. Thus, in addition to failing to establish a liberty interest in contact visitation under the Fourteenth Amendment, Plaintiffs have failed to establish that Defendant Wulfert intended to interfere with or adversely affect Plaintiffs' relationship. As such, Plaintiffs' First claim for Relief fails on this ground as well and must be dismissed.

### 2. Plaintiffs failed to establish they were retaliated against for exercise of protected speech and cannot therefore establish a constitutional violation.

To prevail on a Section 1983 First Amendment retaliation claim, a plaintiff must establish: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). Plaintiffs have alleged that they "were engaging in constitutionally-protected activity at all relevant times, including but not limited to requesting reasonable accommodations for Mr. Cropp's disabilities and objecting to the conduct of Defendants in interfering with their rights ..." [Doc. 1, ¶ 57]. Assuming, for the purpose of this Motion only, that Plaintiffs engaged in protected speech, Plaintiffs' Second claim for Relief must nonetheless be dismissed due to Plaintiffs' failure to establish that they suffered an injury that would chill a person of ordinary firmness from engaging in protected speech,

and that the Defendants' conduct was substantially motivated as a response to Plaintiffs' protected speech.

> ### a. Plaintiffs failed to establish they suffered an injury that would chill a person of ordinary firmness from engaging in protected speech similar to Plaintiffs'.

Plaintiffs baldly state, without any further factual development or record support, that the Defendants' retaliation would chill a person of ordinary firmness from exercising their fundamental constitutional rights and that Plaintiffs suffered injuries as a result of Defendants' actions. [Doc. 1, ¶¶ 60 & 61]. Contrary to Plaintiffs' assertions, however, the record is devoid of any evidence of injury suffered by the Plaintiffs as a result of the Defendants' conduct or that such injury, if it exists, was substantial enough to chill a person of ordinary firmness from engaging in similar activity. In addition to the actions detailed above of Defendant Wulfert and other personnel of the Larimer County Jail to attempt to facilitate the Plaintiffs' communication and face to face visitation with one another, rather than retaliate against the Plaintiffs, Defendants made additional efforts to assist them. Defendant Wulfert arranged for a representative from pretrial services to appear at the booking window to speak with Mrs. Cropp and explain the necessary paperwork, a gesture that was rebuffed by Mrs. Cropp when she refused to speak with the representative. [**Exhibit I**, 50:16-24]. Similar overtures were made to Mr. Cropp, with the same result of Mr. Cropp refusing to review the paperwork without Mrs. Cropp's involvement. [**Exhibit I**, 51:7-24]. Defendant Wulfert, again at the request of Mrs. Cropp, arranged for and accompanied the jail nurse to speak with Mrs. Cropp about Mr. Cropp and his situation. [**Exhibit A**, 129:24 – 130:8]. However, Mrs. Cropp again refused to

communicate with the nurse through the lobby window and in the presence of Defendant Wulfert. [**Exhibit A**, 131:21 – 132:16; 133:4-7]. Further, Defendant Wulfert facilitated a telephone conference with Defendant Wulfert's off-duty supervisor, Lieutenant Esters, in order to provide Mrs. Cropp an opportunity to express her concerns up the jail's chain of command. [**Exhibit A**, 151:23 – 152:7]. Thus, far from retaliating against Plaintiffs, the record clearly establishes that the Defendants repeatedly attempted to accommodate the Plaintiffs.

Moreover, the record is devoid of any evidence of injury suffered by the Plaintiffs that would chill a person of ordinary firmness from engaging in speech. In fact, the record actually establishes that Mrs. Cropp was freely able to exercise her right to free speech during her contact with Defendant Wulfert and other jail personnel. Mrs. Cropp made several videos of her interaction with Defendant Wulfert and other jail personnel, in which Mrs. Cropp can be heard and observed exercising her right to free speech without interference, with Mrs. Cropp providing specific narrative and threatening to post the videos on YouTube. [**Exhibit A**, 168:20 – 169:2; 176:21-25; Depo. Exh. #4-G through 4-J, appended hereto as **Exhibit J (VIDEO)**]. Additionally, while the *Worrell* standard focuses on whether a person of ordinary firmness would be chilled, rather than whether a particular Plaintiff is chilled, a plaintiff's persistence in engaging in the protected speech offers some evidence that the Defendants' actions did not chill such activity. *See, e.g., Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001). Here, there is no allegation by either Plaintiff that the Defendants attempted to interfere with Plaintiffs' speech or that Plaintiffs were prevented from continuing to engage in the protected

speech, and Mrs. Cropp's video record demonstrates that she continued to exercise her rights without interference or injury. In the absence of an established injury sufficient to chill a person of ordinary firmness, Plaintiffs Second claim for Relief fails and must be dismissed as well.

      **b.**    **Plaintiffs have failed to establish the Defendants' conduct was substantially motivated as a response to Plaintiffs' protected speech.**

The third *Worrell* element requires Plaintiffs to establish that the Defendants' adverse action was substantially motivated as a response to Plaintiffs' exercise of constitutionally protected conduct. *Worrell*, 219 F.3d at 1212. "Intent to inhibit speech … can be demonstrated either through direct or circumstantial evidence." *McCook v. Springer Sch. Dist.*, 44 Fed. Appx. 896, 905, (10th Cir. 2002) (quoting *Mendocino Envt'l Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300-01 (9th Cir. 2002)). Here, Defendant Wulfert has asserted the defense of qualified immunity and the Tenth Circuit has established a test for examining the issue of intent in the context of a summary judgement motion based on qualified immunity. [Doc. 10, p. 5, ¶ 6]. "First, Defendants must make a *prima facie* showing of the objective reasonableness of the challenged conduct. If Defendants meet their burden of showing objective reasonableness, we next consider whether the [plaintiff] satisfied the burden of presenting evidence Defendants acted on the basis of a culpable subjective state of mind." *McCook*, 44 F. App'x at 905.

As detailed above, the policies and procedures of the Larimer County Jail prohibiting in-person contact between pretrial detainees and family members, as well as Defendant Wulfert's actions to enforce those policies, was reasonably related to the

legitimate government interest in providing safety and security for the Larimer County Jail. Again, the United States Supreme Court has recognized that a valid and rational connection exists between a ban on contact visits and maintaining the internal security of a detention facility like the Larimer County Jail. *Rutherford*, 468 U.S. at 586. As such, the burden now shifts to the Plaintiffs to establish Defendant Wulfert's conduct was substantially motivated by Plaintiff's exercise of their protected speech.

Plaintiffs cannot meet that burden. Other than Plaintiffs' conclusory statements that "[t]he conduct of the Defendants was substantially motivated as a response to Plaintiff's [sic] exercise of constitutionally-protected conduct," [Doc. 1, ¶ 59], Plaintiffs have failed to elicit any factual evidence, direct or circumstantial, that Defendant Wulfert's conduct was motivated by anything other than an objectively reasonable need to maintain the security and safety of the Larimer County Jail and the individuals present within the facility. As such, Plaintiffs have failed to establish the third *Worrell* element, and their Second claim for Relief fails and must be dismissed.

### 3. Defendant Wulfert's conduct was objectively reasonable and reasonably related to a legitimate governmental interest; therefore, she is entitled to qualified immunity and dismissal of Plaintiffs Section 1983 claims.

When faced with a claim of qualified immunity on summary judgment, the Plaintiff must establish: (1) that the Officer violated a constitutional right and (2) that the constitutional right allegedly violated was clearly established at the time of the conduct giving rise to the Plaintiff's claim. *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). If the Plaintiff fails to carry either part of his two-part burden, Defendant Wulfert is entitled to qualified immunity. *Migneault v. Peck*, 158 F.3d 1131, 1139 (10th Cir. 1998).

Only if the Plaintiff is able to meet his heavy two-step burden, does the burden shift back to the Defendant to demonstrate that there are no genuine issues of material fact and that she is entitled to summary judgment as a matter of law. *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995).

As established above, the Plaintiff cannot show that Defendant Wulfert's decision to deny Plaintiffs' demand for in-person, contact visitation with each other violated a constitutional right. When, as here, the conduct alleged by the Plaintiff fails to establish a violation of the law, there is no need to determine whether the law was clearly established. *Clanton v. Cooper*, 129 F.3d 1147, 1153-54 (10th Cir. 1997). Since the Plaintiffs cannot meet the first part of their two-part burden, Defendant Wulfert is entitled to qualified immunity and summary judgment as a matter of law.

## IV.   CONCLUSION

Based on the undisputed facts and the foregoing arguments and authorities, Defendants respectfully request that all of the Plaintiffs' claims against them be dismissed with prejudice.

Dated, this 4th day of January, 2017.

LARIMER COUNTY ATTORNEY'S OFFICE

*s/Jeannine Haag*
Jeannine Haag
Larimer County Attorney
224 Canyon Ave., Suite 200
P.O. Box 1606
Fort Collins, Co. 80522
(970) 498-7430
(970) 498-7430 (fax)
haagjs@co.larimer.co.us
Counsel for Defendant Larimer County

*s/Michael T. Lowe*
Michael T. Lowe
David M. Goddard
Bruno, Colin & Lowe, P.C.
1999 Broadway, Suite 4300
Denver, CO  80202
Telephone:  (303) 831-1099
Facsimile:   (303) 831-1088
E-mail:  mlowe@brunolawyers.com
E-mail:  dgoddard@brunolawyers.com
*Attorneys for Defendant Kandi Wulfert in her individual capacity*

## CERTIFICATE OF SERVICE BY CM/ECF

I hereby certify that on January 4, 2017, I electronically filed the foregoing DEFENDANTS' MOTION FOR SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Darold W. Killmer      dkillmer@kln-law.com
Michael P. Fairhurst     mfairhurst@kln-law.com
Jeannine Sue Haag       jeanninehaag@larimer.org

*s/Marla A. Brock*