**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:  15-cv-02806-JLK

STANLEY CROPP; and
CATHERINE CROPP,

      Plaintiffs,

v.

LARIMER COUNTY, COLORADO;
KANDI WULFERT, Corporal of Larimer County Sheriff's Office, individually; and
JOHN DOES 1-10, individually,

      Defendants.

_____

**AMENDED COMPLAINT AND JURY DEMAND**
_____

Plaintiffs, STANLEY CROPP and CATHERINE CROPP, by and through counsel,

Darold W. Killmer and Michael P. Fairhurst of KILLMER, LANE & NEWMAN, LLP, respectfully

allege for their Amended Complaint and Jury Demand as follows:

## I.  INTRODUCTION

1.  Stanley and Catherine Cropp have been married for more than forty years. Mr.
Cropp is a retired pharmacist who has Alzheimer's disease and dementia.

2.  Just after Christmas, on December 26-27, 2013, Mr. Cropp was aggressively
tackled and apprehended by Fort Collins, Colorado police officers who mistakenly suspected that
Mr. Cropp might have violated some law while taking a walk in his neighborhood before retiring
for bed at night, an exercise he commonly performed so that he could have a more restful sleep
through the night. The Fort Collins police physically assaulted Mr. Cropp and took him to the
Larimer, County Jail. After Mr. Cropp was booked into the Jail, employees of the Larimer
County, Jail intentionally and unjustifiably significantly worsened one of the most distressing

1

nights of the Cropps' lives. For many hours on December 26-27, Larimer County personnel, including but not limited to Defendant Kandi Wulfert, refused to let the Cropps see each other for even a few minutes in-person so that Mrs. Cropp could help Mr. Cropp understand legal forms he could not interpret on his own, which Jail officials said he had to sign in order to be released. This occurred in spite of the fact that all involved Jail personnel were aware that Mr. Cropp had Alzheimer's disease and dementia, that he could not interpret the forms on his own, and that denying the Cropps the opportunity to visit in-person was severely interfering with their familial relationship and exacerbating the effects of Mr. Cropp's mental disease.

3.      Cold, scared, confused, and still separated from his wife as a result of the deliberate actions of Larimer County personnel, Mr. Cropp eventually relented to executing the forms without any assistance interpreting them, and left the Jail at about 9:00 a.m. on December 27, 2013.

4.      Defendants violated Plaintiffs' rights during incidents occurring in December 2013 and September 2014. Plaintiffs bring this action for Defendants' intentional interference with their constitutionally-protected familial relationship, Defendants' retaliation against them for engaging in constitutionally-protected speech, Defendants' discrimination against Mr. Cropp based on his disabilities, Defendants' failure to reasonably accommodate Mr. Cropp's disabilities, and Defendants' deliberate indifference to the obvious, serious medical needs of Mr. Cropp.

## II.      JURISDICTION AND VENUE

5.      This action arises under the Constitution and laws of the United States.

6.      Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

7.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State at the time of the events giving rise to this litigation.

### III.      PARTIES

**Plaintiffs**

8.      Plaintiff Stanley (Stan) Cropp is a citizen of the United States and was at all times relevant hereto a resident of and domiciled in the State of Colorado.

9.      Plaintiff Catherine (Cathi) Cropp is a citizen of the United States and was at all times relevant hereto a resident of and domiciled in the State of Colorado.

**Defendants**

10.     Defendant Larimer County, Colorado is a political subdivision of the State of Colorado and is responsible for the supervision, training, official polices, customs, and actual practices of the Larimer County Sheriff's Office, along with the supervision, training, official polices, customs, and actual practices of the Larimer County Jail.

11.     Defendant Kandi Wulfert is a citizen of the United States and a resident of and domiciled in the State of Colorado. At all times relevant to the claims against her, Defendant Wulfert was acting under color of state law as a supervisor and an employee of Larimer County Sheriff's Office (LCSO).

12.     Defendants John Does 1-10 are, upon information and belief, residents of and domiciled in the State of Colorado. John Doe Defendants 1-10 are Larimer County Sheriff's Office personnel who worked at the Jail during the pertinent times described herein (including but not limited to the incidents of December 2013 and September 2014) who were involved in the interactions with Plaintiffs which are alleged to have violated their constitutional and

statutory rights. The identities of these John Doe Defendants is not currently known to Plaintiffs, nor is the information within Plaintiffs' possession or control, but is known to Defendants and within the exclusive possession and control of Defendants. Counsel for Plaintiffs has requested of counsel for Defendants the identity of these personnel, but as of the filing of this Complaint, have not been provided with such information. Upon receipt of information sufficient to identify these personnel, Plaintiffs shall seek leave to amend this complaint to specifically identify these Defendants.

## IV.   FACTUAL ALLEGATIONS

13.   At approximately 10:00 p.m. on December 26, 2013, Stan Cropp, a 61-year old retired pharmacist, was (as he frequently did) peacefully going for a walk on a public sidewalk in a residential neighborhood near his home in Fort Collins, Colorado.

14.   Mr. Cropp has Alzheimer's disease and dementia, and was trying to ease his disease-induced anxiety before going to bed, as the adverse effects of Alzheimer's disease tend to increase from morning to night. For Mr. Cropp, a walk before bedtime is relaxing.

15.   At the same time, Officer J. Lang of the Fort Collins Police Department (FCPD) was patrolling Mr. Cropp's neighborhood in a patrol vehicle.

16.   Officer Lang observed Mr. Cropp strolling near the corner of Joseph Allen and Drake Roads while wearing a hooded sweatshirt. Apparently unnerved by the fact that Mr. Cropp had a "hoodie" over his head to stay warm during the wintertime, Officer Lang exited his vehicle and aggressively ordered Mr. Cropp to stop and identify himself. Officer Lang had no reasonable basis to even temporarily detain Mr. Cropp.  There was no legal basis for this police encounter, and Mr. Cropp was legally entitled to ignore the commands.

17.     Startled and confused by the random command of an unidentified individual for him to stop, Mr. Cropp kept walking. Officer Lang again ordered Mr. Cropp to stop and shined a bright flashlight in his face. Mr. Cropp shielded his eyes, identified himself, and asked Mr. Lang who he was, clearly very confused by the situation. Officer Lang unhelpfully responded by commanding Mr. Cropp to stop resisting, turn around, and place his hands on the back of head. Lang's orders made no sense to Mr. Cropp, and scared him, because he had done nothing wrong.

18.     Additionally, the stress of the situation visibly exacerbated the effects of Mr. Cropp's Alzheimer's disease, further compromising his ability to mentally process what was happening. Scared and unmistakably struggling to comprehend the situation, Mr. Cropp shuffled away from Officer Lang. Around this time, Officer Klamser arrived on scene.

19.     Although no probable cause, arguable probable cause, or even reasonable suspicion existed to briefly stop (much less arrest) Mr. Cropp and, despite being on notice that Mr. Cropp was mentally disabled, Officers Lang and Klamser arbitrarily tackled Mr. Cropp from behind as he was walking away, threw him face-first to the gravel, violently wrenched his right arm from underneath his torso, and deliberately handcuffed his wrists painfully tightly together behind his back.

20.     The officers subsequently transported Mr. Cropp to the Larimer County Jail in a patrol car without loosening his handcuffs which they knew were painfully tight, or otherwise attempting to ameliorate Mr. Cropp's obvious physical discomfort or his Alzheimer's Disease-exacerbated mental distress.[1] Unfortunately, Mr. Cropp's traumatic ordeal was far from over.

---

[1] The Fort Collins police violated Mr. Cropp's constitutional rights. The City of Fort Collins has settled all claims urged against them, and is therefore not a party to this action.

5

21.     Mr. Cropp's wife of more than forty years, Cathi Cropp, became increasingly worried as time passed and her ailing husband, Mr. Cropp, failed to return home from his walk. It was, after all, late at night, and his walk typically does not take all that long.

22.     The unexpected nighttime disappearance of a person's 61 year-old husband would be upsetting to anyone, but was especially upsetting to Mrs. Cropp because her husband has a serious mental disability and relies heavily on her to accomplish many daily tasks.

23.     Eventually, Mrs. Cropp was notified by telephone that Mr. Cropp had been arrested (for the first time in his life) and transported to the Larimer County Jail. Mrs. Cropp rushed over to the Larimer County Jail to try to help Mr. Cropp and bring him back home.

24.     When Mrs. Cropp arrived at the Larimer County Jail a little before midnight, she identified herself to Defendant Corporal Kandi Wulfert (a Larimer County employee working in the front area of the Jail who was, upon information and belief, the onsite supervisor) as Mr. Cropp's wife, and told Defendant Wulfert that Mr. Cropp has Alzheimer's Disease and dementia, and that she needed to see him right away, in person, face-to face, in order to help Mr. Cropp understand the paperwork he (allegedly) had to sign in order to be released. She also explained that he had a medical need to take his prescription medications which he had not taken but was supposed to have taken during the prior evening.

25.     Mrs. Cropp further explained to Defendant Wulfert (and other Larimer County employees, including some of the John Doe Defendants) that Mr. Cropp's mental disabilities significantly impede his ability to normally comprehend events, and that the stress of being incarcerated would certainly add to his confusion.

26.     Mrs. Cropp asserted that Mr. Cropp could not competently interpret or sign any paperwork without her face-to-face, hands-on assistance because of his mental disabilities. She

stated that enabling them to meet face-to-face was essential to accommodating his disabilities. She explained that Mr. Cropp's abstract reasoning ability was not intact because of his Alzheimer's and dementia, and that his cognitive abilities were especially compromised during this late hour, as he had not taken his prescribed evening medications, and Alzheimer's symptoms tend to worsen as the day progresses and worsen in response to stressful situations (such as being arrested and taken to jail). For all these reasons (and others),  Jail personnel including Defendant Wulfert and certain of the John Doe Defendants knew Mr. Cropp's mental reasoning ability was very limited at the time, and that Mrs. Cropp was in a unique position to help him due to her familiarity with his disabilities and their husband-wife relationship.

27.     Despite Mrs. Cropp's repeated pleas that she be allowed to visit with Mr. Cropp in-person, face-to face, and her cogent explanations as to why it was necessary, Defendant Wulfert (and all others at Larimer County Jail, including certain of the John Doe Defendants) refused to let her see him in-person, face-to-face at any time before his release.

28.     The deliberate efforts of Defendant Wulfert and others at Larimer County Jail (including certain John Doe Defendants to keep Mr. and Mrs. Cropp physically apart during this terrifying, night-long episode, along with their failures to reasonably accommodate Mr. Cropp's disabilities, caused considerable and understandable distress to Mrs. and Mr. Cropp. This was the first time either of them had ever been in jail and it was the middle of the night.

29.     Defendant Wulfert (and all others at Larimer County Jail, including certain John Doe Defendants) also refused to try to get a lawyer for Mr. Cropp and Mrs. Cropp despite the Cropps' requests for this very basic service.

30.     Mrs. Cropp had multiple encounters with Defendant Wulfert and others employed by Larimer County (including certain John Doe Defendants) as the night passed and, again and

again, thoroughly explained the situation. She left no doubt as to her pressing need to see Mr. Cropp face-to-face and in-person, and his pressing need to see her face-to-face and in-person. She repeatedly and strenuously objected to their refusal to allow her to help husband. But without exception or justification, her requests to meet with him face-to-face and in-person were rejected by Larimer County personnel, including Defendant Wulfert and some of the John Doe Defendants.

31.     Upon information and belief, senior officials at Larimer County Sheriff's Office expressly condoned the decision to keep Mr. and Mrs. Cropp physically separate while Mr. Cropp was detained despite being aware of all relevant circumstances surrounding their requests to see each other face-to-face. This includes a lieutenant, John Doe , who spoke to Mrs. Cropp on the telephone at approximately 3:00 a.m. on December 27.

32.     For his part, Mr. Cropp was detained in a cold cell for the entire night, and Jail officials ignored his complaints that the cell was freezing. Jail officials also did not give Mr. Cropp his medically necessary prescribed medications to treat his Alzheimer's disease, anxiety, and difficulty sleeping despite having actual or constructive notice that he needed the medications immediately. This further exacerbated Mr. Cropp's stress, confusion, and discomfort. These actions and inactions were undertaken by various John Doe Defendants and Defendant Wulfert who, in so doing, exhibited deliberate indifference to Mr. Cropp's serious medical needs, failed to reasonably accommodate his disabilities, discriminated against him based on his disabilities, retaliated against him for engaging in protected speech, and substantially interfered with his relationship with his wife.

33.     Mr. Cropp repeatedly explained to Jail officials, including certain John Doe Defendants, that he could not competently interpret any paperwork without his wife's hands-on,

in-person, face-to-face assistance because he has Alzheimer's disease and dementia. However, as was the case for Mrs. Cropp, Mr. Cropp's pleas to see his longtime spouse in-person were all rejected.

34.     The failure of Defendant Wulfert and other Larimer County employees (including certain John Doe Defendants) to reasonably accommodate Mr. Cropp's disabilities was substantially motivated as a response to Plaintiffs' prior exercises of constitutionally-protected speech objecting to Defendants' mistreatment of both Plaintiffs.

35.     Eventually, Mr. Cropp resigned himself to signing the Jail's paperwork without his wife's assistance in order to escape his frigid cell and finally go home. The Jail released Mr. Cropp at approximately 9:00 a.m. on December 27, 2013.

36.     There existed no legitimate basis for Defendants and other Larimer County personnel to keep Mr. and Mrs. Cropp physically apart during the entire time Mr. Cropp was detained at the Jail. All Defendants and other involved Larimer County personnel knew Mr. Cropp was unarmed; knew Mr. Cropp had mental disabilities including Alzheimer's disease and dementia, and was of relatively advanced age; knew Mrs. Cropp was his wife; knew Mr. Cropp posed no flight risk whatsoever; had actual or constructive knowledge that Mr. Cropp had been arrested for a relatively minor and commonplace offense (obstructing police and resisting arrest); and had actual or constructive knowledge that this was the first time Mr. Cropp had been arrested in his entire life. Defendants and other Larimer County personnel could have easily addressed any concerns surrounding the Cropps' requested face-to-face, in-person contact with each other by simply requiring that they meet in a secure, monitored space with Mr. Cropp in handcuffs, as one example. But neither this nor any other reasonable effort was made to adequately protect the

integrity of the Cropps' intimate relationship, and no reasonable accommodations were made for Mr. Cropp's disabilities.

37.     Following Mr. Cropp's release from jail, the prosecuting attorney dropped all criminal charges against him (all of which were meritless and were related to Mr. Cropp's December 26 encounter with FCPD officers), but not before the Cropps had to pay to retain and pay for the services of a criminal defense attorney.

38.     In September 2014, Mr. Cropp spent about two days in Larimer County Jail for a matter unrelated to the December 2013 events.[2] During this period, the Jail and its employees (including certain John Doe Defendants) deliberately failed to give Mr. Cropp prescription medications that they knew or should have known were needed to treat his disabilities, including but not limited to antidepressants, Alzheimer's medications, anxiety medications, and sleeping medications. There existed no legitimate basis for Defendant John Does to deny Mr. Cropp this (and other) medically necessary care while he was in the County's custody. Defendant John Does had actual or constructive notice during this time that Mr. Cropp had a serious medical need for the care that they were intentionally denying to him.

39.     When Mrs. Cropp picked Mr. Cropp up from the Jail in September 2014, she took him straight to his psychiatrist because he was barely able to speak (Mr. Cropp can speak without much difficulty under normal circumstances) as a result of Defendant John Does recent deliberate indifference to his serious medical needs and failure to reasonably accommodate his disabilities (again).

40.     Defendant Larimer County has failed to properly train, supervise, and/or discipline its subordinate employees and agents who participated in the aforementioned events

_____

[2] *See* fn. 1. Fort Collins and the Cropps have settled all claims relating to this event as well.

despite the obvious need for specialized training, supervision and discipline regarding such decisions, and the fact that its current custom, policies, or practices with respect to training, supervision, and/or discipline are clearly likely to result in a violation of constitutional and other federally-protected rights.

41.     These deficiencies existed at all relevant times – including well before December 26, 2013 – and are exemplified by, among other things, the failure to utilize appropriate training methodology with respect to LCSO employees (on issues such as reasonably accommodating the needs of individuals with disabilities), the failure to provide timely and appropriate medical care to detainees, the failure to require LCSO employees to timely, accurately, or truthfully report their on-the-job conduct, the failure to properly investigate allegations of misconduct against LCSO employees, and the failure to suitably discipline LCSO employees who engaged in misconduct, including but not limited to unconstitutional interference with intimate associational rights, First Amendment retaliation, violations of the Americans with Disabilities Act of 1990, as amended (ADA), and the Rehabilitation Act of 1973, and violations of detainees' rights to appropriate and timely medical care.

42.     Thus, Defendant Larimer County had actual or constructive notice before December 26, 2013 that their deficient customs, practices, and actual policies were substantially certain to result in constitutional (and other legal) violations of a similar nature to those Plaintiffs suffered, and consciously and deliberately chose to disregard the risk of harm.

## STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Fourteenth Amendment Violation – All Plaintiffs
### Intentional Interference with Plaintiffs' Rights to Familial Association
### (Against All Defendants)

43.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

44.     Defendants were acting under color of state law in their actions and inactions which occurred at all times relevant to this action.

45.     Plaintiffs had a protected interest under the Fourteenth Amendment to the United States Constitution against interference with or an undue burden being placed on their intimate familial association with one another.

46.     Defendants and other Larimer County personnel (including certain John Does), acting in concert with one another, unreasonably and unjustifiably burdened Plaintiffs' clearly established associational rights.

47.     Defendants and other Larimer County personnel (including certain John Does) had no legitimate basis for interfering with Plaintiffs' associational rights, and Plaintiffs' compelling interest in their marital association under these circumstances outweighs any countervailing interests Defendants and other Larimer County personnel (including certain John Does) may have possessed.

48.     The actions of Defendants and other Larimer County personnel (including certain John Does) were objectively unreasonable in light of the circumstances confronting them.

49.     Defendants and other Larimer County personnel (including certain John Does) engaged in these actions intentionally, willfully, and wantonly, and/or in reckless disregard of Plaintiffs' federally protected rights.

50.     Defendant Larimer County failed to properly train, supervise and/or discipline their employees regarding the proper bases for infringing upon individuals' rights to familial association.

51.     This inadequate training, supervision, and or discipline results from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant Larimer County.

52.     In light of the duties and responsibilities of Defendant Larimer County personnel, the need for specialized training, supervision and discipline regarding such decisions is so obvious, and the inadequacy of appropriate training and/or supervision is so likely to result in a violation of constitutional rights, such as those described herein, that Defendant Larimer County is liable for its failure to properly train, supervise, and/or discipline its subordinate employees and agents.

53.     Such failure to properly train and supervise was the moving force behind and proximate cause of Defendants' violations of Plaintiffs' constitutional rights, and constitutes an unconstitutional policy, procedure, custom and/or practice.

54.     Plaintiffs have been and continue to be damaged by the conduct of Defendants and other Larimer County personnel.

55.     The acts or omissions of Defendants and other Larimer County personnel, including the unconstitutional policies, procedures, customs and/or practices described herein, were the legal and proximate cause of Plaintiffs' damages.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Violations of First and Fourteenth Amendments to United States Constitution – All Plaintiffs**
**First Amendment Retaliation**
**(Against All Defendants)**

56.     Plaintiffs incorporate all other paragraphs of this Complaint for purposes of this Claim.

57.     Plaintiffs were engaging in constitutionally-protected activity at all relevant times, including but not limited to requesting reasonable accommodations for Mr. Cropp's disabilities and objecting to the conduct of Defendants in interfering with their rights as more fully described herein.

58.     Plaintiffs' speech was related to matters of important public concern.

59.     The conduct of Defendants was substantially motivated as a response to Plaintiff's exercise of constitutionally-protected conduct.

60.     Defendants' retaliation against Plaintiffs for their exercise of constitutionally protected expression would chill a person of ordinary firmness and deter him or her from exercising their fundamental constitutional rights.

61.     The adverse actions of Defendants in retaliation for Plaintiffs' exercise of his free speech rights caused Plaintiffs to suffer injuries.

62.     The conduct of Defendants violated clearly established rights belonging to Plaintiffs of which reasonable public officials knew or should have known.

63.     Plaintiffs' right to speak out on issues of public concern outweighed any interests possessed by Defendants.

64.     Defendants and other Larimer County personnel engaged in the conduct described by this Complaint willfully and wantonly and in reckless disregard of Plaintiffs' legal rights.

65.     The conduct of Defendants and other Larimer County personnel legally and proximately caused significant injuries, damages, and losses to Plaintiffs.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. §1983 – Fourteenth Amendment Violation – Plaintiff Stanley Cropp**
**Failure to Provide Medical Care and Treatment**
**(Against All Defendants)**

66.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

67.     At all times relevant to the allegations in this Complaint, Defendants acted or failed to act under color of state law.

68.     Defendants are persons subject to suit under 42 U.S.C. § 1983.

69.     At all times relevant to the allegations in this Complaint, Defendants were acting pursuant to municipal custom, policy, or practice in their actions pertaining to Mr. Cropp.

70.     At all times relevant to the allegations in this Complaint, Defendants knew or should have known of Mr. Cropp's serious medical conditions, including but not limited to Alzheimer's disease and dementia, and related impairments and conditions.

71.     Nevertheless, with deliberate indifference to Mr. Cropp's constitutional right not to be denied necessary medical care, protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, Defendants failed to properly treat and care for Mr. Cropp's medical conditions during the incidents described above that occurred in December 2013 and September 2014. They did so despite their knowledge of Mr. Cropp's serious medical needs, placing him at risk of substantial physical harm.

72.     When Mr. Cropp, and others on his behalf, alerted Defendants to Mr. Cropp's need for medical assistance and requested that such assistance be provided, Defendants acted with deliberate indifference to Mr. Cropp's obviously serious medical need and constitutional rights by failing to obtain and provide medical treatment for him in a timely and appropriate fashion.

73.     The acts or omissions of all Defendants were conducted within the scope of their official duties and employment.

74.     The acts or omissions of all Defendants were the legal and proximate cause of Mr. Cropp's injuries.

75.     The actions or inactions of Defendants as described herein intentionally deprived Mr. Cropp of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused him other damages.

### FOURTH CLAIM FOR RELIEF
**42 U.S.C. § 12132, *et seq.* – Violation of Americans with Disabilities Act of 1990, as Amended**
**Unlawful Discrimination and Failure to Reasonably Accommodate – Plaintiff Stanley Cropp**
**(Against All Defendants)**

76.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

77.     At all relevant times, Mr. Cropp was a person with a disability, had a record of a disability, or was regarded as having a disability by Defendants and other Larimer County personnel.

78.     Larimer County is a public entity as that term is used in Title II of the ADA.

79.     Mr. Cropp was qualified to participate in the services, programs, activities, and benefits provided to detainees at Larimer County's detention facilities within the meaning of Title II of the ADA.

80.     Defendants discriminated against Mr. Cropp based on his disabilities and failed to reasonably accommodate his disabilities despite knowing that he suffered from a number of disabilities, including Alzheimer's disease and dementia, and related impairments and conditions. This violated clearly established law under Title II of the ADA and its implementing regulations.

81.     Defendants had no legitimate basis for violating Mr. Cropp's rights conferred by the ADA.

82.     The actions of Defendants were objectively unreasonable in light of the circumstances confronting them.

83.     Defendants and other Larimer County personnel (including certain John Does) engaged in these actions intentionally, willfully, and wantonly.

84.     Defendant Larimer County failed (and continues to fail) to properly train, supervise and/or discipline their employees regarding the proper treatment of, and accommodations for, individuals with disabilities and, in particular, mental disabilities.

85.     This inadequate training, supervision, and/or discipline results from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant Larimer County.

86.     In light of the duties and responsibilities of Defendant Larimer County personnel, the need for specialized training, supervision and discipline regarding such decisions is so obvious, and the inadequacy of appropriate training and/or supervision is so likely to result in a violation of constitutional rights, such as those described herein, that Defendant Larimer County is liable for its failure to properly train, supervise, and/or discipline its subordinate employees and agents.

87.     Such failure to properly train and supervise was the moving force behind and proximate cause of the violations of Plaintiffs' federally-protected rights described herein, and constitutes an unconstitutional policy, procedure, custom and/or practice.

88.     Mr. Cropp has been and continues to be damaged by Defendants' and other Larimer County personnel's unlawful conduct under the ADA.

89.     The acts or omissions of Defendants and other Larimer County personnel, including the unlawful policy, procedure, custom and/or practice described herein, were the legal and proximate cause of Mr. Cropp's damages.

**FIFTH CLAIM FOR RELIEF**
**29 U.S.C. § 701, *et seq.* – Violation of the Rehabilitation Act of 1973, as Amended**
**Unlawful Discrimination – Plaintiff Stanley Cropp**
**(Against All Defendants)**

90.     Plaintiffs hereby incorporate all paragraphs of this Complaint as though fully set forth herein.

91.     At all times relevant to this Complaint, Mr. Cropp's Alzheimer's disease and dementia (and his associated impairments and conditions, including anxiety, depression, and sleep disorders) substantially limited a variety of major life activities, including but not limited to mentally processing current events, thinking, remembering past events, concentrating, sleeping, and effectively coping with anxiety and stress.

92.     Mr. Cropp is an individual with a disability within the meaning of the Rehabilitation Act of 1973.

93.     Mr. Cropp was qualified to participate in the services, programs, activities, and benefits provided to detainees at Larimer County's detention facilities within the meaning of the Rehabilitation Act of 1973,

94.     Defendants and their programs and activities receive – and have received at all times relevant to this Complaint – federal financial assistance as that term is used in 29 U.S.C. § 794.

95.     Defendants and other Larimer County personnel have excluded Mr. Cropp from participation in, denied him the benefits of, and subjected him to discrimination in programs and activities solely by reason of his disability in violation of 29 U.S.C. § 794 and its implementing

regulations. Examples of this wrongdoing include but are not limited to the refusal of Defendants and others employed by Larimer County to permit Mr. Cropp to communicate with Mrs. Cropp in-person during his detention on December 26-27, 2013, and the failure of County personnel to give Mr. Cropp his prescription medications in December 2013 and September 2014. Defendants and other Larimer County personnel have engaged in substantially similar discriminatory conduct against other mentally-disabled individuals who are or have been in the custody of Larimer County.

96.     Defendants and other Larimer County personnel illegally, severely, and/or pervasively harassed Mr. Cropp because of his disability.

97.     Defendants are liable for the acts and/or omissions of their agents and employees. Defendants, either directly or by and through agents, discriminated against Mr. Cropp on the basis of his disability, record of having a disability, or being perceived as having a disability.

98.     In violating the Rehabilitation Act, Defendants and other Larimer County personnel acted intentionally, maliciously, and/or with reckless and/or deliberate indifference to Plaintiffs' federally protected rights.

99.     As a consequence of the illegal conduct of Defendants and other Larimer County personnel, Mr. Cropp has sustained and continues to sustain significant damages.

100.     The conduct of Defendants and other Larimer County personnel was the proximate cause of Mr. Cropp's injuries, damages, and losses.

**SIXTH CLAIM FOR RELIEF**
**42 U.S.C. § 12132, *et seq.* – Violation of Americans with Disabilities Act of 1990, as Amended**
**Unlawful Discrimination, Failure to Reasonably Accommodate, and Unlawful Retaliation –**
**Plaintiff Cathi Cropp**
**(Against Defendant Larimer County)**

101.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

102.    At all relevant times, Mr. Cropp was a person with a disability, had a record of a disability, or was regarded as having a disability by Defendants and other Larimer County personnel.

103.    At all relevant times, Ms. Cropp was known to be closely associated with a person with a disability – Mr. Cropp.

104.    Larimer County is a public entity as that term is used in Title II of the ADA.

105.    Mr. and Ms. Cropp were qualified to participate in the services, programs, activities, and benefits provided to detainees at Larimer County's detention facilities within the meaning of Title II of the ADA.

106.    Defendants intentionally discriminated against Ms. Cropp because of her known association with a person who was disabled – Mr. Cropp.

107.    Defendants intentionally discriminated against Ms. Cropp because of her known relationship with a person who was disabled – Mr. Cropp.

108.    Ms. Cropp's requested accommodations for herself and Mr. Cropp were reasonable as a matter of law and not unduly burdensome to any of the Defendants as a matter of law.

109.    Defendant Wulfert also retaliated against Ms. Cropp for engaging in protected activity under the ADA by, *inter alia*, taking the adverse action against her (and Mr. Cropp) of refusing to permit Mr. and Ms. Cropp to meet in an unobstructed setting at any time while Mr. Cropp was in jail.

110.    Defendant Wulfert's retaliatory acts were substantially motivated in response to Ms. Cropp's engagement in protected activity under the ADA, including but not limited to repeatedly requesting the reasonable accommodation of meeting with Mr. Cropp in an unobstructed setting at the jail.

111.    Defendants had no legitimate basis for violating Ms. Cropp's rights conferred by the ADA.

112.    The actions of Defendants were objectively unreasonable in light of the circumstances confronting them.

113.    Defendants and other Larimer County personnel (including certain John Does) engaged in these actions intentionally, willfully, and wantonly.

114.    Defendant Larimer County failed (and continues to fail) to properly train, supervise and/or discipline their employees regarding the proper treatment of, and accommodations for, individuals with disabilities and, in particular, mental disabilities.

115.    This inadequate training, supervision, and/or discipline results from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant Larimer County.

116.    In light of the duties and responsibilities of Defendant Larimer County personnel, the need for specialized training, supervision and discipline regarding such decisions is so obvious, and the inadequacy of appropriate training and/or supervision is so likely to result in a violation of constitutional rights, such as those described herein, that Defendant Larimer County is liable for its failure to properly train, supervise, and/or discipline its subordinate employees and agents.

117.    Such failure to properly train and supervise was the moving force behind and proximate cause of the violations of Plaintiffs' federally-protected rights described herein, and constitutes an unconstitutional policy, procedure, custom and/or practice.

118.    Ms. Cropp has been and continues to be damaged by Defendants' and other Larimer County personnel's unlawful conduct under the ADA.

119.    The acts or omissions of Defendants and other Larimer County personnel, including the unlawful policy, procedure, custom and/or practice described herein, were the legal and proximate cause of Ms. Cropp's damages.

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment in their favor and against Defendants, and award them all relief as allowed by law and equity, including, but not limited to the following:

    a.  Declaratory relief and injunctive relief, as appropriate;

    b.  Actual economic damages as established at trial;

    c.  Compensatory damages, including, but not limited to those for past and future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, medical bills, and other non-pecuniary losses;

    d.  Punitive damages for all claims as allowed by law in an amount to be determined at trial;

    e.  Issuance of an Order mandating appropriate equitable relief, including but not limited to:

        i.  Issuance of a formal written apology from each Defendant to Plaintiffs;

        ii.  The imposition of policy changes designed to avoid future similar misconduct by Defendants and other Larimer County personnel;

      iii.  Mandatory training designed to avoid future similar misconduct by Defendants and other Larimer County personnel;

      iv.  An explicit prohibition against any retaliation against Plaintiffs;

      v.  Imposition of disciplinary action against appropriate employees of the institutional Defendant;

  f.  Pre-judgment and post-judgment interest at the highest lawful rate;

  g.  Attorney's fees and costs; and

  h.  Such further relief as justice requires.

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED this 3rd day of April 2017.

KILLMER, LANE & NEWMAN, LLP

*/s/ Darold W. Killmer*

_____

Darold W. Killmer
Michael P. Fairhurst
1543 Champa St., Ste. 400
Denver, CO 80202
Phone: (303) 571-1000
Facsimile: (303) 571-1001
dkillmer@kln-law.com
mfairhurst@kln-law.com

ATTORNEYS FOR PLAINTIFFS